

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 26, 2015**

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEBORAH D. CHILDERS, | § | CASE NO. 10-10405-RLJ-13 |
| | § | |
| | § | |
| DEBTOR. | § | |

## MEMORANDUM OPINION

The debtor, Deborah Childers (Deborah), has filed a modification to her chapter 13 plan, which plan was originally confirmed on May 25, 2011, when she and her late husband, Scotty Eugene Childers, were proceeding as joint chapter 13 debtors. The chapter 13 trustee, Robert Wilson, opposes the modification.

### Background

The Childers filed their chapter 13 case on November 12, 2010. Scotty Childers died on March 11, 2014, just short of four years into their five-year plan. The plan as confirmed required that the Childers pay $450 per month to the chapter 13 trustee for purposes of servicing their requirements under the plan. Scotty Childers contributed over $5,000 per month to the Childers'

1

living expenses and obligations under the plan.

Deborah makes about $1,500 per month as a teacher's aide. She has continued to perform under the plan as originally confirmed.

Deborah was a beneficiary under a life insurance policy on the life of Scotty Childers that paid out $105,016.68 upon his death. After payment of approximately $34,000 in taxes incurred upon early withdrawals by Scotty from his retirement account, Deborah has just over $71,000 of the life insurance proceeds remaining, which the parties have stipulated are exempt property.

On June 3, 2014, Deborah tendered $27,950 of the insurance money to the chapter 13 trustee to pay-off the chapter 13 plan. To formally effect this, she filed the plan modification on June 26, 2014, asking the Court to approve the proposal. The net result of the modification, if approved, is that her plan will be paid-off a few months early and thus short of the five years—and she would then receive her chapter 13 discharge. The projected percentage payout to unsecured creditors at the time of confirmation of the Childers' chapter 13 plan was 9.25%.

**Discussion**

In summary, Deborah, who during the latter stages of this chapter 13 case lost her husband and thus the major contributor to their plan, is simply asking the Court to approve her proposal to use a portion of her exempt funds to pay-off her chapter 13 plan a few months early. This is indeed a generous gesture. But the trustee opposes it. The trustee contends that a five-year plan means the plan must go the full five years. This potentially raises the issue of whether the five-year requirement is, as the trustee contends, a temporal requirement—five years means five years—or merely a multiplier. If it is a multiplier, a debtor may prepay a plan so long as the prepayment is equal to or greater than the product of the monthly payments times the number of months under the plan (thirty-six months for a three-year plan and sixty months for a five-year

2

plan). The trustee argues that the plan must satisfy the "applicable commitment period" here of five years.[1] There is certainly support for the trustee's position that the applicable commitment period is a temporal requirement. The Eleventh Circuit in *Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873 (11th Cir. 2010), held that, at confirmation, an applicable commitment period of five years for an above-median income debtor means just that—it must go the full five years. As the *Tennyson* court pointed out, a plain reading of the statute so requires. Section 1325(b)(4)(B) provides that a plan "may be less than 3 or 5 years, whichever is applicable . . . , but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period." This is clear enough. But it seems absurd to deny Deborah's request. She is not required to use her exempt funds for the plan; allowing her to do so pays creditors the same amount, but sooner. All risk of non-payment goes away.

The reasoning and indeed the holding of *Tennyson* is unassailable. But so too is the propriety of the proposal here. If the Court were to tell Deborah that she must go the full five years, she would likely withdraw her proposal, keep the $27,950, and just continue to make her plan payments for the balance of the plan term. Or, given her present situation, she could possibly convert the case to a proceeding under chapter 7. Neither of these alternatives is better for her creditors than her proposal.

An analysis of the issue here begins with the question of whether her proposal even constitutes a modification under the statute. "Since [an] early payment does not change the substantive terms of the plan, i.e. claimants receive exactly what was bargained for in the plan as confirmed, an acceleration is not a modification under § 1329." *In re McCollum*, 348 B.R. 377,

---

[1] "Applicable commitment period" is the phrase used at § 1325(b) of the Code, which provision requires that, if the trustee or a creditor objects to the debtor's plan, the debtor's plan must dedicate the debtor's "disposable income" for the entirety of the "applicable commitment period." 11 U.S.C. § 1325(b)(1). The criteria for determining the applicable commitment period, three years or five years, is set forth at § 1325(b)(4).

3

389 (Bankr. E.D. La. 2006). Assuming the debtor is proceeding in good faith, this ends the inquiry. Section 1329, the modification provision, and its incorporation of § 1325, is not triggered. All payments are made; under § 1328, the debtor is entitled to receive a discharge. *Id*. (citations omitted). This view—that an early payout may not even be a modification—is not, as the *McCollum* court noted, a universally accepted position, however. *Id*. It does appear to fly in the face of § 1329 which states that a modification may "extend or reduce the time for . . . payments." 11 U.S.C. § 1329(a)(2). And how can this view be reconciled with § 1325(b)(4)(B), mentioned above?

If a proposed prepayment from exempt funds is a modification, the Court must then decide if § 1329's mandate that a modification satisfy § 1325(a) means it must likewise satisfy subsection (b) of § 1325. If the trustee or a creditor objects to the plan, subsection (b) imposes the requirement that the debtor's disposable income be paid through the "applicable commitment period."[2] Imposing the requirements of subsection (b) when reference is specifically made to just § 1325(a) is questionable, but it is not absurd. Section 1325(a) begins, "[e]xcept as provided in subsection (b) . . . ." A minority, at least, of courts that have addressed the issue impose the requirements of § 1325(b) upon a modification.

For those courts that hold that the provisions of § 1325(b) need not be consulted upon a modification, an early "lump sum payment in satisfaction of a confirmed plan, while a modification, is not prohibited by a strict reading of § 1329." *McCollum*, 348 B.R. at 390. But if subsection (b) of § 1325 does apply, the Court must then determine if the modification meets its provisions. This potentially raises the oft-debated question of whether the applicable commitment period is a multiplier or a temporal requirement. In canvassing the cases decided by then, the

---

[2] *See supra* note 1.

*McCollum* court said that "[a] minority of courts hold that the lump sum payment of the amounts due on a confirmed plan is a modification which must satisfy both the provisions of §§ 1325 and 1329 in their entirety. These jurists will not allow the early satisfaction of a plan through a lump sum payment unless the debtor has paid a minimum of 36 months of disposable income into the plan." *Id*. (citations omitted).[3]

The answer here is obvious. Deborah's proposal is not only generous, it also benefits her creditors. If her modification is not really a modification, the analysis ends—at least arguably. If it is a modification under the statute, which the Court believes is the better interpretation, and the Court adopts the position that § 1325(a) only—and not subsection (b)—applies, Deborah's proposal easily passes scrutiny. But what if § 1325(b) does apply? This view best recognizes the full import of the language of the statute. In applying subsection (b), however, the Court concludes that the modification satisfies such provision, as well. Subsection (b) incorporates the applicable commitment period and sets forth the formula for determining whether a debtor must go three years or five years. *See* 11 U.S.C. § 1325(b)(4). It then provides that the applicable commitment period, whether three years or five years, may not be shortened unless creditors are paid in full.

---

[3] The *McCollum* bankruptcy case was filed a few months prior to the implementation of the major amendments to the Code that took effect in October 2005. As such, the then-applicable version of § 1325(b) referred to the debtor's dedication of disposable income for the three-year plan period. The current version of § 1325(b), as set forth, refers to the "applicable commitment period." Prior to the extensive amendments of 2005, a chapter 13 plan had to have, at a minimum, a three-year plan period, with a longer period—up to five years—approved upon request and for cause. As stated in the text above, the Eleventh Circuit in *Tennyson*, decided well after the amendments, held that an above-median-income debtor could not obtain *confirmation* of a plan that was not a five-year plan. The debtor in *Tennyson* was an above-median-income debtor with negative disposable income and thus proposed a three-year plan. The bankruptcy judge construed the applicable Code provisions in a way that allowed the three-year plan. But he was ultimately reversed by the Eleventh Circuit. The bankruptcy court in *In re Buck*, 443 B.R. 463 (Bankr. N.D. Ga. 2010), upon a proposed *plan modification*, looked to *Tennyson* in holding that the applicable commitment period is a temporal requirement. But two cases from Florida—*In re Smith*, 449 B.R. 817, 819–21 (Bankr. M.D. Fla. 2011) and *In re Tibbs*, 478 B.R. 458, 461–65 (Bankr. S.D. Fla. 2012)—each held that the debtor may complete a plan early by prepaying an amount sufficient to pay the plan's requirement. And, in a decision from the Northern District of Texas, *In re McCarthy*, 391 B.R. 372 (Bankr. N.D. Tex. 2008) (en banc), the court, in effect, approved a prepayment where the trustee had already disbursed the funds to creditors and certified the plan was completed.

The Childers' plan as originally confirmed was, as stated in the practice, "an above-median income" plan that thus triggered the five-year requirement under the statute. The evidence before the Court reveals that Deborah makes no more than approximately $1,500 per month. The parties have stipulated that her income is below the median income for a single person in Texas. Her plan, as modified, need only be a three-year plan under § 1325(b). She has already well exceeded the three years.

## Conclusion

Regardless of the approach taken by the Court in analyzing the question before it, the Court concludes that Deborah's modification does indeed satisfy the requisite requirements of the Bankruptcy Code. The modification will be approved. The trustee is directed to submit an order approving the modification.

### End of Memorandum Opinion ###